IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

DYLAN MILLER,

      Petitioner,

                    18-CR-6077-EAW

 v.

UNITED STATES OF AMERICA,

      Respondent.

---

## GOVERNMENT'S SUPPLEMENAL FILING

  The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Sean C. Eldridge, Assistant United States Attorney, of counsel, hereby submits this supplemental memorandum addressing three matters identified by the Court: (1) the application of *Bousley*'s "more serious" test; (2) the collateral attack waiver contained in the plea agreement; and (3) the appropriate remedy, should vacatur of Count 6 occur.

## DISCUSSION

  **I.** ***Bousley* and Foregone Charges**

  As discussed in the government's prior filing, Petitioner cannot establish "actual innocence" to excuse his procedural default under the facts and history of this case. In the context of this prosecution, "actual innocence" means that Petitioner must show not only that he was factually innocent of the § 924(c) violation he pleaded guilty to, but also to any other § 924(c) violations that the government did not pursue in light of the plea arrangement. As

the Supreme Court held, "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Petitioner pleaded guilty to a single firearms related count of possessing (or aiding and abetting) a firearm in furtherance of a crime of violence that was discharged, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), which is Count 6 of the Information. At the time of Petitioner's guilty plea, he also faced (and admitted facts to support) four additional counts of brandishing (or aiding and abetting) a firearm in furtherance of a crime of violence (corresponding to Counts 1, 2, 3, and 4 of the Information), in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

At all times through the Petitioner's sentencing, each of those additional firearms charges would have constituted a "second or subsequent" violation of § 924(c), such that the mandatory minimum term of imprisonment would have been 25 years (with a maximum still of life) on each count, which must be served consecutively to any other term(s) of imprisonment imposed. *See* 18 U.S.C. § 924 (c)(1)(C) (2018).

If the severity of the four additional and foregone § 924(c) violations is judged by either their mandatory minimum sentence under the law in effect at the time[1] of the plea, or under the applicable Guidelines range, the foregone charges are plainly more serious – since the mandatory minimum sentence would be 25 years on each of the foregone charges, all to run

---

[1] That later changed on December 21, 2018, when President Trump signed into law the First Step Act (FSA) of 2018 (P.L. 115- 391). The FSA modified § 924(c) to state that the mandatory minimum sentence of 25 years for a "second or subsequent" offense only applies for conducted committed "after a prior conviction under this subsection has become final."

consecutively, as opposed to the 10 year minimum sentence applicable, and imposed, on Count 6. Similarly, under Guidelines § 2K2.4(b), "if the defendant, whether or not convicted of another crime, was convicted of violating section 924(c)… the guideline sentence is the minimum term of imprisonment required by statute." As such, the Petitioner's Guidelines range for each of the foregone § 924(c) charges would also be 25 years on each.

If the severity of the four additional and foregone § 924(c) violations is judged by their maximum sentences, they are all equally serious since both Count 6 and the foregone charges all have a maximum sentence of life. Circuit Courts that have addressed this issue have found that when applying *Bousley*'s "more serious" rule, its logic applies to charges the government forewent as part of the plea process that were equally serious. *See, e.g., United States v. Caso*, 723 F.3d 215, 221-22 (D.C. Cir. 2013); *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003). Similarly, as this Court noted in its Order directing supplemental briefing, the Second Circuit has noted this same rule in two summary orders, *Kinley v Artus*, 571 F. App'x 30, 31 (2d Cir. 2014) ("Moreover, that factual innocence requirement applies not only to the count of conviction, but also to charges that are equally or more serious," citing *Bousely*) and *Lyons v. LaClarie*, 571 F. App'x 34, 35 (2d Cir 2014) (same).

That *Kinley* and *Lyons* are summary orders does not mean district courts, or even the Second Circuit itself, are free to reach different conclusions. That is the Second Circuit's stated view, which it has explained in several published decisions. *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010). ("Although we decided *Petrucelli* by nonprecedential summary order, rather than by opinion, our '[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases,' Order dated June 26, 2007,

3

adopting 2d Cir. Local R. 32.1."   Or as Judge Furman put it, "a district judge is not 'at liberty … to disregard,' let alone 'contradict[,] a Second Circuit ruling squarely on point merely because it was rendered in a summary order.'" *Boone v. United States*, No. 02-CR-1185 (JMF), 2017 WL 398386, at *1 (S.D.N.Y. Jan. 30, 2017), quoting *United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010).

Following *Bousley,* if seriousness is judged by their mandatory minimum sentences, the foregone charges would mandate a consecutive sentence of 100 years in total (25 on each, to run consecutively), far in excess of the 10 year mandatory minimum applicable to Count 6. Following cases including *Kinley*, *Lyons*, *Caso* and *Peterson*, even if judged by their maximum sentences – which is life imprisonment – the Petitioner's showing of actual innocence must extend to these foregone charges.

II.     **The Plea Agreement's Collateral Attack Waiver**

The Second Circuit's decision in *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) demonstrates that Petitioner has waived his right to pursue this § 2255 petition, addresses the issue raised here by the Court, and is also consistent with a case pointed out by the Court, *Rudolph v. United States*, 92 F.4th 1038 (11th Cir. 2024), which applied a collateral attack waiver (there, that defendant "voluntarily and expressly waives…the right to collaterally attack his sentence in any post-conviction proceeding…") to bar a challenge to Olympic bomber Eric Rudolph's underlying conviction.

In *Garcia-Santos*, the petitioner brought a §2255 petition seeking to "set aside his conviction," which the district court denied, finding he had waived such rights in his plea

4

agreement. The Second Circuit recited the applicable waiver language from the plea agreement, which was this:

> It is further agreed (i) that the defendant will neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the stipulated Guidelines range and (ii) that the Government will not appeal any sentence within or above the stipulated Guidelines range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

*Garcia-Santos*, 273 F.3d at 507.

Garcia-Santos was sentenced to 78 months, which was within the plea agreement's stipulated Guidelines range of 78 to 94 months. He took no appeal, but about a year later, "filed this § 2255 petition, attacking his conviction on numerous grounds." *Id.* at 508. The district court denied his § 2255 petition because Garcia-Santos had waived his right to petition under § 2255 in his plea agreement. The Second Circuit affirmed, holding, as relevant here, that:

> There is every reason to believe the parties intended the waiver to apply to claims of error at sentencing as well as to claims relating to pre-pleading events since, for a defendant who pleads guilty, the main contested issues are ordinarily about the sentencing. Such an agreement serves important interests of both parties. Like a waiver of direct appeal rights, it serves the government's interest in avoiding both the expense and uncertainty of further litigation. *See United States v. Rosa,* 123 F.3d 94, 97 (2d Cir.1997). The defendant characteristically receives important benefits as well. For Garcia–Santos, the waiver was part of the bargain by which he received exemption from prosecution for other crimes, the government's stipulation to an acceptable Guidelines range, and the government's agreement that it would not seek upward departures or adjustments beyond that range. He therefore received significant assurance, although no guarantee, that the sentence would not exceed a predicted maximum severity.

> We uphold the effectiveness of Garcia–Santos's waiver of the right to attack his conviction by petition under § 2255, *see United States v. Cockerham,* 237 F.3d 1179 (10th Cir. Jan. 18, 2001), *DeRoo v. United States,* 223 F.3d 919 (8th Cir. 2000), *Watson v. United States,* 165 F.3d 486 (6th Cir. 1999), *Jones v. United States,* 167 F.3d 1142 (7th Cir. 1998), *United States v. Wilkes,* 20 F.3d 651 (5th Cir. 1994), *United States v. Abarca,* 985 F.2d 1012 (9th Cir. 1993), and rule that the waiver applies to grounds that arise after, as well as before, he made the waiver.

*Id.* at 509.

The language in the Petitioner's plea agreement here is not materially different than that in *Garcia-Santos*. Here, the written plea agreement provides that Petitioner "knowingly waives his right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment . . ." specified in the plea agreement. The collateral attack waiver also specifically provides that Petitioner "understands that by agreeing not to collaterally attack the sentence, [Petitioner] is waiving the right to challenge the sentence in the event that in the future [Petitioner] becomes aware of ... a change in the law which … would justify a decrease in [Petitioner's] sentence." As such, the collateral review waiver in Petitioner's plea agreement also requires denial of the Petition.

### III. Available Remedies

If Count 6 were to be vacated, this Court has several options under § 2255(b), which directs that if the judgment is vacated, the Court should "resentence him or grant a new trial or correct the sentence as may appear appropriate."

As such, one option would be to conduct a *de novo* resentencing that accounts for all of the facts and circumstances of the case. *See, e.g., Hall v. United States*, 58 F.4th 55, 58 (2d

6

Cir. 2023) ("The district court in its discretion may either leave standing Hall's sentence on the Hobbs Act robbery conspiracy, or it may resentence on that count if it concludes that the existing sentence is inadequate when no longer supplemented by the consecutive 60-month sentence imposed on the now-vacated section 924(c) conviction.") And in doing so, this Court could simply reimpose the same sentence previously imposed, albeit by allocating the time differently between Counts 1 through 5 to reach the same net result. That would be an acceptable result; after all, it is essentially the same result (just through a different route) as what the parties bargained for and would, as it did before, satisfy the § 3553(a) factors.

The Second Circuit's recent decision in *United States v. Pena*, 58 F.4th 613, 624 (2d Cir.), *cert. denied,* 144 S. Ct. 147 (2023) strongly suggests that *de novo* resentencing would be the wisest course of action. In the § 2255 context, *Pena* observed, without holding, that "[i]t may be that in most cases in which resentencing would not be strictly ministerial, a district court abuses its discretion when it denies *de novo* resentencing." *Id.*

The Court is correct that vacating Count 6 would have the practical (but not legal) effect of undoing the parties' agreement. This package of charges and the result was the entire purpose of the plea bargaining process in this case: the government forewent charges that had solid proof (including video tape evidence of the robberies, and the government's recovery of the firearm involved) and would have resulted in an additional mandatory 100-year consecutive sentence. And in return, the parties agreed to resolve the matter with the plea agreement that was entered into and gave benefits to both parties, including a greatly reduced sentence for the Petitioner. Simply eliminating the 10-year sentence on Count 6 would be unjust in that it would be inconsistent with the parties' agreement and it would not sufficiently

7

account for many of the § 3553(a) factors, including the seriousness of the offenses. But a vacatur of Count 6 would also not void the agreement; rather, it would undo the combination of charges that were agreed to in the plea agreement, likely resulting in, amongst other things, *de novo* resentencing.

Further, if the Petitioner is successful on his challenge, it may have the effect of exposing him to greater time than what he bargained for. Under the plea agreement, the Petitioner waived any statute of limitations challenge to any foregone charges, such as those under § 924(c), for a period of six months after the vacating of any count of conviction becomes final. As a result, he could face charges under § 924(c) for the four foregone firearms offenses that would correspond to Counts 1, 2, 3 and 4. Under the current version of § 924(c), convictions on those offenses would result in a mandatory minimum sentence of 7 years on each count, all to be served consecutively, for a mandatory minimum sentence of 28 years. That is an option the government has, and we would evaluate how to proceed in that regard if and when that decision were necessary.

DATED:   November 4, 2024 at Rochester, New York.

                                        Respectfully submitted,

                                        TRINI E. ROSS
                                        United States Attorney

By:   S/Sean C. Eldridge
      SEAN C. ELDRIDGE
      Assistant United States Attorney
      Western District Of New York
      100 State Street, Suite 500
      Rochester, New York 14614
      (585) 399-3953
      Sean.Eldridge@usdoj.gov